**CAPEHART SCATCHARD, P.A.**
142 West State Street
Trenton, New Jersey 08608
Attorneys for Plaintiff City of Cape May

By: Anthony T. Drollas, Jr., Esq.
    NJ Attorney ID Number:  040941988
    (609) 394-2400

    William R. Burns, Esq.
    NJ Attorney ID Number:  018892001
    (609)394-2400

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

---------------------------------------------------------------

| | |
|---|---|
| **CITY OF CAPE MAY,** : | |
| : | CIVIL ACTION NO.: _____ |
|         Plaintiff, : | |
| : | |
|    vs. : | |
| : | |
| **KIMMEL BOGRETTE ARCHITECT +** : | |
| **SITE INC., KLEIN & HOFFMAN,** : | **COMPLAINT** |
| **INC., GILLAN & HARTMANN, INC.,** : | |
| **FRALINGER ENGINEERING, P.A.,** : | **DEMAND FOR JURY TRIAL** |
| **HUNTER ROBERTS CONSTRUCTION** : | |
| **GROUP; ARTHUR J. OGREN, INC.;** : | |
| **ARTHUR J. HENRY, INC.;** : | |
| ***INDIVIDUAL NAMED DEFENDANTS*,** : | |
| **JOHN DOES 1-100 AND JOHN DOES** : | |
| **101-200, ABC CORPORATIONS 1-** : | |
| **100, XYC P.A.S 1-100.** : | |
| : | |
|         Defendants. | |

-------------------------------

     Plaintiff, the City of Cape May (hereinafter the "City"),

through its attorneys, Capehart Scatchard, P.A. (William R.

Burns, Esq. and Anthony T. Drollas, Jr.; Esq. appearing) by way

of Complaint against the Defendant says:

## THE PARTIES

1.      The City is a body politic and corporate of the State of New Jersey, with its main office located at 643 Washington Street, Cape May, NJ 08204.

2.      At all times mentioned, Kimmel Bogrette Architect + Site Inc, was an architectural firm duly licensed to practice in the State of New Jersey, incorporated in the Commonwealth of Pennsylvania and having its principal offices located at 151 E. 10th Avenue, Suite 300, Conshohocken, PA 19428.

3.      At all times mentioned, Klein & Hoffman, Inc., was an architectural and engineering firm duly licensed to practice in the State of New Jersey, incorporated in the State of Illinois with principal offices located at 150 S. Wacker Drive, Suite 1900, Chicago, IL 60606-4201.

4.      At all times mentioned, Gillan & Hartmann, Inc. was an engineering firm duly licensed to practice in the State of New Jersey, incorporated in the Commonwealth of Pennsylvania with principal offices located at P.O. Box 345, Valley Forge PA, 19481-035.

5.      At all times mentioned, Fralinger Engineering, P.A. was an engineering firm duly licensed to practice in the State of New Jersey, with principal offices located at 629 Shiloh Pike, Bridgeton, NJ 08302.

2

6.      At all times mentioned, Hunter Roberts Construction Group was a construction management and engineering firm duly licensed to practice in the State of New Jersey, formed as a limited liability company ("L.L.C") in the State of Delaware, with principal offices located at 225 Liberty Street, 6th Floor, New York, NY 10281.

7.      At all times mentioned, Arthur J. Ogren, Inc. was a construction company duly registered and incorporated in New Jersey, with principal offices located at 178 East Garden Road, Vineland, New Jersey 08360.

8.      At all times mentioned, Arthur R. Henry, Inc. was a New Jersey domestic for profit corporation with offices located at 3031 Ocean Heights Avenue, Egg Harbor, New Jersey 08234.

9.      Kimmel Bogrette Architect + Site Inc., Klein & Hoffman, Inc., Gillan & Hartmann, Inc., Fralinger Engineering, P.A., Hunter Roberts Construction Group, Arthur J. Ogren, Inc. and Arthur R. Henry, Inc., (hereinafter "Defendants"), individually and collectively performed work on behalf of the City to construct a new Cape May Convention Center in accordance with Local, County, State and Federal regulations.

10.     The new Cape May Convention Center was not constructed in accordance with Local, County, State or Federal regulations.

## CAUSES OF ACTION

11.  This court has jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship and an amount in controversy greater than $75,000.

## FIRST COUNT

### (BREACH OF CONTRACT)

12.      On various dates beginning on or about October 16, 2007, and as amended and restated several times through 2012, the City and Kimmel Bogrette Architect + Site Inc. (hereinafter "Kimmel") entered into a contract (hereinafter "the Agreement"), whereby Kimmel would provide professional architectural and design services for the construction of a new Cape May Convention Hall, located at 714 Beach Avenue, Cape May, New Jersey, (hereinafter "the Project"), which included services for schematic design, design development, and construction administration.

13.      The Agreement further required Kimmel to perform the required professional services with a degree of care and skill ordinarily exercised under similar conditions in similar locations.

14.      Contrary to the Agreement, the services that Kimmel provided were defective and faulty, and thus require correction and subsequent remediation.

4

15.     In accordance with the terms of the Agreement, the City complied with its own obligations and duties under the Agreement.

16.     Following substantial completion of the Project, but prior to final completion, the City became aware of various design defects that were the responsibility of Kimmel.

17.     Kimmel breached its Agreement with the City by, among other things, failing to properly design the Project, and/or failing to prepare the Project plans and specifications with sufficient detail and information, and/or by failing to abide by City, County, State and/or Federal regulations in the development of the design preparations of plans, specifications and construction administration.

18.     Kimmel's breaches of the Agreement were the direct and proximate cause of financial damages to the City, including, but not limited to, increased flood insurance premiums that will require the City to incur unexpected costs associated with the Project, and/or potential costly modifications to the Project to ensure regulatory compliance.

## SECOND COUNT

### (PROFESSIONAL NEGLIGENCE)

19.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 18 of this Complaint, as if the same were more fully set forth at length herein.

20.     Kimmel, through its agents, servants and employees, negligently failed to exercise ordinary care and otherwise failed to exercise the degree of knowledge, professional skill and judgment commonly exercised by other architects in the field, because Kimmel was careless and/or negligent in the preparation of the Project plans and specifications, and/or failed to properly plan and design the Project with sufficient detail and information, so that the Project could be constructed in a proper manner, and in accordance with the City's intended use, and with City, County, State, and Federal regulations.

21.     Kimmel abrogated its responsibility to maintain reasonable efforts to ensure that the conduct of all agents, servants, employees and representatives with whom it is associated and to whom it delegated various obligations was compatible with the professional standard of care and in accordance with the obligations of a licensed architect.

22.     The negligence of Kimmel was the direct and proximate cause of damages to the City including, but not limited to, increased insurance premiums, and/or potential costly

modifications to the Project in order to obtain adequate flood insurance and to ensure regulatory compliance, which resulted in monetary damages.

### THIRD COUNT

#### (NEGLIENCE)

23.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 22 of this Complaint, as if the same were more fully set forth at length herein.

24.     At all times, Kimmel owed the City a duty of care to:

        a.   Accurately represent to the City its obligations under Local, County, State and Federal regulations and Kimmel's ability to properly comply with these regulations in the design and construction of the Project, and

        b.   Diligently select, entrust, hire, train, direct, or instruct its agents, servants, employees and representatives, and

        c.   Perform its obligations and duties in a reasonably good and/or workmanlike manner.

25.     Kimmel performed its duties and obligations under the Agreement in a careless and/or reckless and/or negligent manner, and rendered services that did not comply with requirements of the Agreement, Local, County, State and/or Federal regulations.

26.     The aforementioned conduct constitutes negligence and serves as the direct and proximate cause of the City's monetary damages.

**FOURTH COUNT**

**(UNJUST ENRICHMENT/QUANTUM MERUIT)**

27.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 26 of this Complaint, as if the same were more fully set forth at length herein.

28.     The City detrimentally relied on Kimmel's representations in providing the services required under the Agreement, and the City reasonably believed them to be true, and would not have entered into and/or performed under the Agreement but for Kimmel's representations.

29.     Subsequent to entering into the Agreement, Kimmel failed to comply with its duties and obligations under the Agreement and as required by City, County, State and Federal regulations.

30.     As a result of Kimmel's misconduct, Kimmel was unjustly enriched, and the City is therefore entitled to recover damages from Kimmel.

## FIFTH COUNT

### (VICARIOUS LIABILITY)

31.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 30 of this Complaint, as if the same were more fully set forth at length herein.

32.     Kimmel is an architectural firm that hired other professional engineering firms as subcontractors who failed to exercise reasonable care in the construction and/or design of the Project.

33.     Kimmel is vicariously liable to the City for any damages that the City suffered as a result of the negligence that is the responsibility of the professional engineering firms, and subcontractors and builders who Kimmel hired for the Project.

34.     Kimmel is vicariously liable for any negligence in the construction and/or design of the Project that is the direct and proximate cause of the City's monetary damages.

## SIXTH COUNT

### (BREACH OF CONTRACT)

35.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 34 of this Complaint, as if the same were more fully set forth at length herein.

36.      On or about February 20, 2009, Kimmell Bogrette Architecture + Site, Inc. and Klein & Hoffman, Inc. (hereinafter "Klein") entered into a written Agreement (hereinafter "the Agreement"), whereby Klein was to provide professional structural engineering services, engineering services, architectural services and design services for the construction of the new Cape May Convention Hall. (hereinafter "the Project").

37.      The City of Cape May is a third party beneficiary to that contract. The contract was made by Kimmell Bogrette Architecture + Site, Inc. and Klein with the intention to benefit the City and that benefit was a material part of the contract and/or Architecture + Site, Inc. and Klein intended the benefit the City was to receive to be enforceable in court.

38.      The Agreement required Klein to, perform the required professional services with a degree of care and skill ordinarily exercised under similar conditions in similar locations. Contrary to the Agreement, the services that Klein provided were defective, faulty, and thus required correction and subsequent remediation.

39.      Upon substantial completion of the Project, but prior to final completion, the City became aware of various design, construction, and structural defects that were the responsibility of Klein.

40.     Klein breached the Agreement by, among other things, failing to properly design the Project, and/or failing to prepare the Project plans drawings and specifications with sufficient detail and information, and/or by failing to abide by City, County, State and/or Federal regulations.

41.     Klein's breaches of the Agreement were the direct and proximate cause of monetary damages to the City, including, but not limited to, increased flood insurance premiums and/or potential costly modifications to the Project to ensure regulatory compliance, which compel the City to incur unexpected costs associated with the Project.

**SEVENTH COUNT**

**(PROFESSIONAL NEGLIGENCE)**

42.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 41 of this Complaint, as if the same were more fully set forth at length herein.

43.     Klein, through its agents, servants and employees, negligently failed to exercise ordinary care and otherwise failed to exercise the degree of knowledge, professional skill and judgment commonly exercised by other architects, structural engineers, and/or engineers because Klein was careless and/or negligent in the preparation of the Project plans, drawings and specifications, failed to properly plan and design the Project with sufficient detail and information so that the Project could

11

be constructed in a proper manner so that the Project could be constructed in accordance with the City's intended use and in accordance City, County, State and Federal regulations,

44.     Klein abrogated its responsibility to maintain reasonable efforts to ensure that the conduct of all agents, servants, employees and representatives with whom it is associated and to whom it delegated various obligations is compatible with the professional standard of care and in accordance with the obligations of a licensed architect, structural engineer and/or engineer.

45.     The negligence of Klein as set forth above was the direct and proximate cause of significant damages to the City, including, but not limited to, increased insurance premiums, and/or potential costly modifications to the Project in order to ensure regulatory compliance.

### EIGHTH COUNT

### (NEGLIGENCE)

46.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 45 of this Complaint, as if the same were more fully set forth at length herein.

47.     At all times, Klein & Hoffman, Inc. owed the City a duty of care to:

        a.   Accurately represent to the City its obligations under Local, County, State and Federal regulations and

12

Klein ability to properly comply with those regulations in the design and construction of the Project, and

b.    Diligently select, entrust, hire, train, direct, or instruct its agents, servants, employees and representatives, and

c.    Perform it obligations and duties in a reasonably good and/or workmanlike manner.

48.    Klein performed its duties obligations under the agreement in a careless and/or reckless and/or negligent manner, rendering services that did not comply with requirements of the Agreement, Local, County, State and/or Federal regulations.

49.    The aforementioned conduct constitutes negligence and serves as the direct and proximate cause of the City's monetary damages, as such misconduct required the City to incur additional and unexpected costs to complete and/or repair the work that was not performed in a reasonable manner, as promised by Klein pursuant to the Agreement, and required by City, County, State and Federal regulations.

## NINTH COUNT

### (UNJUST ENRICHMENT/QUANTUM MERUIT)

50.    The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 49 of this Complaint, as if the same were more fully set forth at length herein.

51.     The City detrimentally relied on Klein's representations in providing the services required under the Agreement, and the City reasonably believed them to be true, and would not have performed under the Agreement but for Klein's representations.

52.     Subsequent to entering into the Agreement, Klein failed to comply with its duties and obligations under the Agreement and as required by City, County, State and Federal regulations.

53.     As a result of Klein's misconduct, Klein was unjustly enriched, and the City is therefore entitled to recover damages from Klein.

## TENTH COUNT

### (CONTRACTOR LIABILITY FOR DEFECTIVE WORK)

54.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 53 of this Complaint, as if the same were more fully set forth at length herein.

55.     Klein is a contractor who failed to exercise reasonable care in the construction and or design of the Project.

56.     Klein is liable to the City for damages the City suffered.

57.      Klein's negligence in the construction and/or design of the Project is the direct and proximate cause of the City's monetary damages.

### ELEVENTH COUNT

### (BREACH OF CONTRACT)

58.      The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 57 of this Complaint, as if the same were more fully set forth at length herein.

58.      On or about February 20, 2009, the Kimmel Bogrette Architecture + Site, Inc. and Gillan & Hartmann, Inc., (hereinafter "Gillan"), entered into a written Agreement (hereinafter "the Agreement") whereby Gillan would provide professional mechanical engineering services, engineering services, and design services for the construction of the new Cape May Convention Hall (hereinafter "the Project"), which services included schematic design, design development, and construction administration.

59.      The City of Cape May is a third party beneficiary to that contract. The contract was made by Kimmel Bogrette Architecture + Site and Gillan with the intention to benefit the City and that benefit was a material part of the contract and/or Kimmel Bogrette Architecture + Site, Inc. and Gilan intended the benefit the City was to receive to be enforceable in court.

60.     The Agreement required Gillan to perform the required professional services with a degree of care and skill ordinarily exercised under similar conditions in similar locations.

61.     Contrary to the Agreement, the services that Gillan provided were defective and faulty, and thus require correction and subsequent remediation.

62.     Following substantial completion of the Project, but before final completion, the City became aware of various design and construction defects that were the responsibility of Gillan.

63.     Gillan breached the Agreement by among other things, failing to properly design the Project, and/or failing to prepare the Project plans drawings and specifications with sufficient detail and information, and/or by failing to abide by City, County, State and/or Federal regulations in the performance of its duties and obligations under the Agreement.

64.     Gillan's breaches of the Agreement were the direct and proximate cause of financial damages to the City, including, but not limited to, increased flood insurance premiums and/or potential costly modifications to the Project to ensure regulatory compliance, which compel the City to incur unexpected costs associated with the Project.

## TWELFTH COUNT

### (PROFESSIONAL NEGLIGENCE)

65.      The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 64 of this Complaint, as if the same were more fully set forth at length herein.

66.      Gillan, through its agents, servants and employees, negligently failed to exercise ordinary care and otherwise failed to exercise the degree of knowledge, professional skill and judgment commonly exercised by other structural engineers, and/or engineers because Gillan, was careless and/or negligent in the preparation of the Project plans, drawings and specifications, and/or failed to properly plan and design the Project with sufficient detail and information, so that the Project could be constructed in a proper and timely manner and in accordance with Local, County, State and Federal regulations.

67.      Gillan abrogated its responsibility to maintain reasonable efforts to ensure that the conduct of all agents, servants, employees and representatives with whom it is associated and to whom it delegated various obligations is compatible with the professional standard of care and in accordance with the obligations of a licensed structural engineer and/or engineer.

68.      The negligence of Gillan was the direct and proximate cause of damages to the City, including, but not limited to,

17

increased insurance premiums and/or potential costly modifications to the Project to ensure regulatory compliance.

## THIRTEENTH COUNT

### (NEGLIGENCE)

70.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 69 of this Complaint, as if the same were more fully set forth at length herein.

71.     At all times, Gillan owed the City a duty of care to:

      a.   Accurately represent to the City its obligations under Local, County, State and Federal regulations and Gillan's ability to properly comply with those regulations in the design and construction of the Project, and

      b.   Diligently select, entrust, hire, train, direct, or instruct its agents, servants, employees and representatives, and

      c.   Perform it obligations and duties in a reasonably good and/or workmanlike manner.

72.     Gillan performed its duties and obligations under the Agreement in a careless and/or reckless and/or negligent manner rendering services that did not comply with requirements of the Agreement, Local, County, State and/or Federal regulations.

18

73.       The aforementioned conduct constitutes negligence and serves as the direct and proximate cause of the City's monetary damages, as such misconduct required the City to incur additional and unexpected costs to secure adequate flood insurance, and to ensure the Project's compliance with City, County, State and/or Federal regulations.

### FOURTEENTH COUNT

#### (UNJUST ENRICHMENT/QUANTUM MERUIT)

74.       The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 73 of this Complaint, as if the same were more fully set forth at length herein.

75.       The City detrimentally relied on Gillan's representations in providing the services required under the Agreement, and the City reasonably believed them to be true, and would not have performed under the Agreement but for Gillan's representations.

76.       Subsequent to entering into the Agreement, Gillan failed to comply with its duties and obligations under the Agreement and as required by City, County, State and Federal regulations.

77.       As a result of Gillan's misconduct, Gillan was unjustly enriched, and the City is therefore entitled to recover damages from Gillan.

## FIFTEENTH COUNT

### (CONTRACTOR LIABILITY FOR DEFECTIVE WORK)

78.     The City repeats and reiterates the allegations in
Paragraph 1 through Paragraph 77 of this Complaint, as if the
same were more fully set forth at length herein.

79.     Gillan is a contractor that failed to exercise
reasonable care in the design and/or construction of the
Project.

80.     Gillan is liable to the City for property and monetary
damages suffered by the City as a result of Gillan's negligence.

81.     Gillan's negligence in the construction and/or design
of the Project is the direct and proximate cause of the City's
monetary damages.

## SIXTEENTH COUNT

### (BREACH OF CONTRACT)

82.     The City repeats and reiterates the allegations in
Paragraph 1 through Paragraph 81 of this Complaint, as if the
same were more fully set forth at length herein.

83.     On or about February 20, 2009, the Kimmel Bogrette
Architecture + Site, Inc. and Fralinger Engineering, P.A.
(hereinafter "Fralinger") entered into a written Agreement
(hereinafter "the Agreement") whereby Fralinger would provide
professional engineering and civil engineering services,
professional land surveying services, and design services for

the construction of the new Cape May Convention Hall,
(hereinafter "the Project"), which services included schematic
design, design development, and construction administration.

84.     The City of Cape May is a third party beneficiary to
that contract. The contract was made by Kimmel Bogrette
Architecture + Site, Inc. and Fralinger with the intention to
benefit the City and that benefit was a material part of the
contract and/or Kimmel Bogrette Architecture + Site, Inc. and
Fralinger intended the benefit the City was to receive to be
enforceable in court.

85.     The Agreement required Fralinger to perform the
required professional services with a degree of care and skill
ordinarily exercised under similar conditions in similar
locations.

86.     Contrary to the Agreement, the services that Fralinger
provided were defective and faulty, and thus required correction
and subsequent remediation.

87.     Following substantial completion of the Project, but
prior to final completion, the City became aware of various
design, construction, and engineering defects that were the
responsibility of Fralinger.

88.     Fralinger breached the Agreement with the City by,
among other things, failing to properly design the Project,
failing to properly survey the Project, failing to properly

develop and implement a site plan, failing to properly prepare permits, and/or failing to prepare the Project plans drawings and specifications with sufficient detail and information, and/or by failing to abide by City, County, State and/or Federal regulations in the performance of its duties and obligations under the Agreement.

90.     Fralinger's breaches of the Agreement, were the direct and proximate cause of monetary damages to the City, including but not limited to increased flood insurance premiums and/or potential costly modifications to the Project to ensure regulatory compliance.

<u>**SEVENTEENTH COUNT**</u>

**(PROFESSIONAL NEGLIGENCE)**

91.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 90 of this Complaint, as if the same were more fully set forth at length herein.

92.     Fralinger, through its agents, servants and employees, negligently failed to exercise ordinary care and otherwise failed to exercise the degree of knowledge, professional skill and judgment commonly exercised by other professional engineers or civil engineers, because Fralinger was careless and/or negligent in the preparation of the Project plans, drawings, specifications, preliminary and/or final site plan, in the preparation of the various permits, topographical survey(s), and

22

reports, and/or failed to properly plan and design the Project with sufficient detail and information so that the Project could be constructed in a proper and timely manner in accordance with the City's intended use, and in accordance with City, County, State, and Federal regulations.

93.     Fralinger abrogated its responsibility to maintain reasonable efforts to ensure that the conduct of all agents, servants, employees and representatives with whom it is associated and to whom it delegated various obligations is compatible with the professional standard of care and in accordance with the obligations of a licensed civil engineer and/or engineer.

94.     The negligence of Fralinger was the direct and proximate cause of damages to the City, including but not limited to, increased insurance premiums, and/or potential costly modifications to the Project in order to obtain adequate flood insurance and to ensure regulatory compliance.

## EIGHTEENTH COUNT

### (NEGLIGENCE)

95.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 94 of this Complaint, as if the same were more fully set forth at length herein.

96.     At all times, Fralinger owed the City a duty of care to:

  a.   Accurately represent to the City its obligations under Local, County, State and Federal regulations and Fralinger's ability to properly comply with those regulations in the design and construction of the Project, and

  b.   Diligently select, entrust, hire, train, direct, or instruct its agents, servants, employees and representatives, and

  c.   Perform it obligations and duties in a reasonably good and/or workmanlike manner.

97.     Fralinger performed its duties and obligations under the Agreement in a careless and/or reckless and/or negligent manner, rendering services that did not comply with requirements of the Agreement, Local, County, State and/or Federal regulations.

98.     The aforementioned conduct constitutes negligence, and serves as the direct and proximate cause of the City's monetary damages.

## NINETEENTH COUNT

### (UNJUST ENRICHMENT/QUANTUM MERUIT)

99.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 98 of this Complaint, as if the same were more fully set forth at length herein.

100.    The City detrimentally relied on Fralinger's representations in providing the services required under the Agreement, and the City reasonably believed them to be true, and would not have performed under the Agreement, but for Fralinger's representations.

101.    Subsequent to entering into the Agreement, Fralinger failed to comply with its duties and obligations under the Agreement, and as required by City, County, State and Federal regulations.

102.    As a result of Fralinger's misconduct, Fralinger was unjustly enriched, and the City is therefore entitled to receive damages from Fralinger.

## TWENTIETH COUNT

### (CONTRACTOR LIABILITY FOR DEFECTIVE WORK)

103.    The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 102 of this Complaint, as if the same were more fully set forth at length herein.

104.      Fralinger is a contractor that failed to exercise reasonable care in the construction and or design of the Project.

105.      Fralinger is liable to the City for damages the City suffered as a result of their negligence.

106.      Fralinger's negligence in the construction and/or design of the Project is the direct and proximate cause of the City's damages.

## TWENTY-FIRST COUNT

### (BREACH OF CONTRACT)

107.      The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 106 of this Complaint, as if the same were more fully set forth at length herein.

108.      On or about February 25, 2010, the City and Hunter Roberts Construction Group, (hereinafter "Hunter") entered into a written Agreement (hereinafter "the Agreement") whereby Hunter would provide construction management and engineering services for the construction of the new Cape May Convention Hall, (hereinafter "the Project"), which services included schematic design, design development, and construction administration and management.

109.      Hunter was required to perform the required services with a degree of care and skill ordinarily exercised under similar conditions in similar locations.

26

110.    The services that Hunter provided were defective and faulty, and thus required correction and subsequent remediation.

111.    In accordance with the terms of the Agreement, the City complied with its owns obligations and duties under the Agreement.

112.    Following substantial completion of the Project, but prior to final completion, the City became aware of various design and construction defects that were the responsibility of Hunter.

113.    Hunter breached its Agreement with the City by, among other things, failing to properly design the Project and/or failing prepare the Project plans and specifications with sufficient detail and information, failing to properly manage the Project, failing to properly construct the Project, and/or by failing to abide by City, County, State and/or Federal regulations in the management and construction of the Project.

114.    Hunter's breaches of the Agreement were the direct and proximate cause of monetary damages to the City, including but not limited to increased flood insurance premiums and/or potential costly modifications to the Project to ensure regulatory compliance that will require the City to incur unexpected costs associated with the Project.

## TWENTY-SECOND COUNT

### (PROFESSIONAL NEGLIGENCE)

115.    The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 114 of this Complaint, as if the same were more fully set forth at length herein.

116.    Hunter, through its agents, servants and employees, negligently failed to exercise ordinary care and otherwise failed to exercise the degree of knowledge, professional skill and judgment commonly exercised by other professionals because Hunter was careless and/or negligent in the preparation of the Project plans and specifications, and/or was careless or negligent in the completion of a comprehensive constructability review of the plans and specifications for completeness, efficiency and consistency, and/or failed to properly plan, design and implement the Project with sufficient detail and information so that the Project could be constructed in a proper and timely manner, in accordance with the City's intended use, and in accordance with City, County, State, and/or Federal regulations.

117.    Hunter abrogated its responsibility to maintain reasonable efforts to ensure that the conduct of all agents, servants, employees and representatives with whom it is associated and to whom it delegated various obligations is

compatible with the professional standard of care and in accordance with the obligations their profession.

118.    The negligence of Hunter was the direct and proximate cause of damages to the City including, but not limited to, increased insurance premiums and/or potential costly modifications to the Project in order to obtain adequate flo0d insurance and to ensure regulatory compliance.

### TWENTY-THIRD COUNT

#### (Negligence)

119.    The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 118 of this Complaint, as if the same were more fully set forth at length herein.

120.    At all times, Hunter owed the City a duty of care to:

      a.    Accurately represent to the City its obligations under Local, County, State and Federal regulations and Hunter Roberts Construction Group's ability to properly comply with those regulations in the design and construction of the Project, and

      b.    Diligently select, entrust, hire, train, direct, or instruct its agents, servants, employees and representatives, and

      c.    Perform it obligations and duties in a reasonably good and/or workmanlike manner.

121.     Hunter performed its duties obligations under the Agreement in a careless and/or reckless and/or negligent manner, rendering services that did not comply with requirements of the Agreement, Local, County, State and/or Federal regulations.

122.     The aforementioned conduct constitutes negligence, and serves as the direct and proximate cause of the City's monetary damages.

### TWENTY-FOURTH COUNT

### (UNJUST ENRICHMENT/QUANTUM MERUIT)

123.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 122 of this Complaint, as if the same were more fully set forth at length herein.

124.     The City detrimentally relied on Hunter's representations in providing the services required under the Agreement, and the City reasonably believed them to be true, and would not have entered into and/or performed the Agreement, but for Hunter's representations.

125.     Subsequent to entering into the Agreement, Hunter failed to comply with its duties and obligations under the Agreement, and as required by City, County, State and Federal regulations.

126.     As a result of Hunter's misconduct, Hunter was unjustly enriched, and the City is therefore entitled to recover damages from Hunter.

## TWENTY-FIFTH COUNT

### (CONTRACTOR LIABILITY FOR DEFECTIVE WORK)

127.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 126 of this Complaint, as if the same were more fully set forth at length herein.

128.     Hunter is a contractor that failed to exercise reasonable care in the construction and or design of the Project.

129.     Hunter is liable to the City for damages the City suffered as a result of their negligence.

130.     Hunter's negligence in the construction and/or design of the Project is the direct and proximate cause of the City's damages.

131.     Hunter is liable to the City for damages that the City suffered as a result of their negligence.


## TWENTY-SIXTH COUNT

### (CONSUMER FRAUD ACT)

132.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 131 of this Complaint, as if the same were more fully set forth at length herein.

133.     At all times relevant to this complaint, Hunter was engaged in construction management services.

31

134.     The City contracted with Hunter to provide comprehensive construction management services to supervise and execute the construction work on the Project, to assure that the Project was completed safely, within the budget, and consistent with schedule requirements, and in accordance with Local, County, State and Federal regulations.

135.     The services at issue in this cause are "merchandise" within the scope of the Consumer Fraud Act, N.J.S.A. 56:8-1(c).

136.     In engaging in the above conduct, Hunter committed an unconscionable commercial practice, deception, fraud, falsity, misrepresentation, or knowingly concealed, suppressed or omitted material facts, with the intent that the City relied on said omissions in connection with the management of Project, in that Hunter knowingly concealed or suppressed the various design and construction deficiencies from the City, and/or failed to inform the City that the Project was not being constructed in accordance with the agreement and/or Local, County, State and Federal regulations.

137.     Hunter knowingly concealed, suppressed or omitted material facts with the intent that City rely on such suppression, concealment or omissions to City's detriment, in that the Project was completed, even though said Project was not in compliance with the Agreement and/or with Local, County,

State and/or Federal regulations.  The City's reliance on Hunter and its acts caused monetary damages to the City.

138.    As a result of Hunter's unlawful conduct, City has suffered an ascertainable loss of money.

## TWENTY-SEVENTH COUNT

### (BREACH OF CONTRACT)

139.    The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 138 of this Complaint, as if the same were more fully set forth at length herein.

140.    On or about June 20, 2011, the City and Arthur J. Ogren, Inc., (hereinafter "Ogren"), entered into a written Agreement (hereinafter "the Agreement") whereby Ogren was to provide construction management and construction services for the construction of the new Cape May Convention Hall (hereinafter "the Project").

141.    The Agreement required Ogren to perform the required services with a degree of care and skill ordinarily exercised under similar conditions in similar locations. Contrary to the Agreement, the services that Ogren provided were defective, faulty, and required correction and subsequent remediation.

142.    In accordance with the terms of the Agreement, the City complied with its owns obligations and duties under the Agreement.

143.    Following substantial completion of the Project, but before final completion, the City became aware of various design and construction defects that were the responsibility of Ogren.

144.    Ogren breached its Agreement with the City by, among other things, failing to properly manage the Project, failing to properly construct the Project, and/or by failing to abide by City, County, State and Federal regulations in the design and/or construction of the Project.

145.    Ogren's breaches of the Agreement were the direct and proximate cause of monetary damages to the City, including but not limited to increased flood insurance premiums and/or potential costly modifications to the Project to ensure regulatory compliance.

**TWENTY-EIGHTH COUNT**

**(NEGLIGENCE)**

146.    The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 145 of this Complaint, as if the same were more fully set forth at length herein.

147.    At all times, Ogren owed the City a duty of care to:

    a.    Accurately represent to the City its obligations under Local, County, State and Federal regulations and Ogren's ability to properly comply with those regulations in the design and construction of the Project, and

34

b.    Diligently select, entrust, hire, train, direct, or instruct its agents, servants, employees and representatives, and

c.    Perform it obligations and duties in a reasonably good and/or workmanlike manner.

148.    Ogren performed its duties obligations under the Agreement in a careless and/or reckless and/or negligent manner, rendering services that did not comply with requirements of the Agreement, and with Local, County, State and/or Federal regulations.

149.    The aforementioned conduct constitutes negligence, and serves as the direct and proximate cause of the City's monetary damages.

**TWENTY-NINTH COUNT**

**(UNJUST ENRICHMENT/QUANTUM MERUIT)**

150.    The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 145 of this Complaint, as if the same were more fully set forth at length herein.

151.    The City detrimentally relied on Ogren's representations in providing the services pursuant to the Agreement, and the City reasonably believed them to be true, and would not have entered into and/or performed under the Agreement, but for Ogren's representations.

152.    Subsequent to entering into the Agreement, Ogren failed to comply with its duties and obligations under the Agreement, and with those imposed by City, County, State and Federal regulations.

153.    As a result of Ogren's misconduct, Ogren was unjustly enriched, and the City is therefore entitled to recover damages from Ogren.

### THIRTIETH COUNT

### (Contractor Liability for Defective Work)

154.    The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 143 of this Complaint, as if the same were more fully set forth at length herein.

155.    Ogren is a contractor that failed to exercise reasonable care in the construction and or design of the Project.

156.    Ogren is liable to the City for damages that the City suffered, including monetary damage as a result of their negligence.

157.    Ogren's negligence in the construction and/or design of the Project is the direct and proximate cause of the city's damages.

### THIRTY-FIRST COUNT

### (CONSUMER FRAUD ACT)

158.    The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 157 of this Complaint, as if the same were more fully set forth at length herein.

159.    At all times relevant to this complaint, Ogren was engaged in construction services.

160.    The City contracted with Ogren to provide comprehensive construction services to supervise and execute the construction work on the Project, to assure that the Project was completed safely, within the budget, and consistent with schedule requirements, and in accordance with Local, County, State and Federal regulations.

161.    The services at issue in this cause are "merchandise" within the scope of the Consumer Fraud Act, N.J.S.A. 56:8-1(c).

162.    In engaging in the above conduct, Ogren committed an unconscionable commercial practice, deception, fraud, falsity, misrepresentation, or knowingly concealed, suppressed or omitted material facts, with the intent that the City relied on said omissions in connection with the management of Project, in that Ogren knowingly concealed or suppressed the various design and construction deficiencies from the City, and failed to inform the City that the Project was not being constructed in accordance with the agreement and/or Local, County, State and Federal regulations.

163.     Ogren knowingly concealed, suppressed or omitted material facts with the intent that City rely on such suppression, concealment or omissions to City's detriment, in that the Project was completed even though it was not in compliance with the Agreement, and with Local, County, State and/or Federal regulations.  The City's reliance on Ogren and its acts caused monetary damages to the City.

164.     As a result of Ogren's unlawful conduct, the City has suffered an ascertainable loss of money.

**THIRTY-SECOND COUNT**

**(BREACH OF CONTRACT)**

165.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 164 of this Complaint, as if the same were more fully set forth at length herein.

166.     On or about February 1, 2011, the City and Arthur R. Henry, Inc., (hereinafter "Henry"), entered into a written Agreement (hereinafter "the Agreement") whereby Henry was to provide construction services for the construction of the new Cape May Convention Hall (hereinafter "the Project").

167.     Henry was required to perform the required services with a degree of care and skill ordinarily exercised under similar conditions in similar locations, but the services that Henry provided were defective, faulty, and required correction and subsequent remediation.

38

168.    In accordance with the terms of the Agreement, the City complied with its owns obligations and duties under the Agreement.

169.    Following substantial completion of the Project, but before final completion, the City became aware of various construction defects that were the responsibility of Henry.

170.    Henry breached its Agreement with the City by, among other things, failing to properly manage the Project, failing to properly construct the Project, and/or by failing to abide by Local, County, State and Federal regulations in the design and construction of the Project.

171.    Henry's breaches of the Agreement were the direct and proximate cause of monetary damages to the City, including but not limited to increased flood insurance premiums and/or potential costly modifications to the Project to ensure regulatory compliance.

**THIRTY-THIRD COUNT**

**(NEGLIGENCE)**

172.    The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 171 of this Complaint, as if the same were more fully set forth at length herein.

173.    At all times, Henry owed the City a duty of care to:

    a.    Accurately represent to the City its obligations under Local, County, State and Federal regulations and

39

Henry's ability to properly comply with those regulations in the construction of the Project, and

b.    Diligently select, entrust, hire, train, direct, or instruct its agents, servants, employees and representatives, and

c.    Perform it obligations and duties in a reasonably good and/or workmanlike manner.

174.    Henry performed its duties obligations under the Agreement in a careless and/or reckless and/or negligent manner rendering services that did not comply with requirements of the Agreement, Local, County, State and/or Federal regulations.

175.    The aforementioned conduct constitutes negligence, and serves as the direct and proximate cause of the City's monetary damages.

## <u>THIRTY-FOURTH COUNT</u>

### <u>(UNJUST ENRICHMENT/QUANTUM MERUIT)</u>

176.    The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 175 of this Complaint, as if the same were more fully set forth at length herein.

177.    The City detrimentally relied on Henry's representations in providing the services pursuant to the Agreement, and the City reasonably believed them to be true, and would not have entered into and/or performed under the Agreement, but for Henry's representations.

178.     Subsequent to entering into the Agreement, Henry failed to comply with its duties and obligations under the Agreement, and those imposed by City, County, State and/or Federal regulations.

179.     As a result of Henry's misconduct, Henry was unjustly enriched, and the City is therefore entitled to recover damages from Henry.

### THIRTY-FIFTH COUNT

### (Contractor Liability for Defective Work)

180.     The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 179 of this Complaint, as if the same were more fully set forth at length herein.

181.     Henry is a contractor that failed to exercise reasonable care in the construction and or design of the Project.

182.     Henry is liable to the City for damages that the City suffered including monetary damage as a result of their negligence.

183.     Henry's negligence in the construction of the Project is the direct and proximate cause of the City's monetary damages.

### THIRTY-SIXTH COUNT

### (CONSUMER FRAUD ACT)

41

184.    The City repeats and reiterates the allegations in Paragraph 1 through Paragraph 183 of this Complaint, as if the same were more fully set forth at length herein.

185.    At all times relevant to this complaint, Henry was engaged in construction services.

186.    The City contracted with Henry to provide construction services that were consistent with the Project's schedule requirements, and in accordance with Local, County, State and/or Federal regulations.

187.    The services at issue in this cause are "merchandise" within the scope of the Consumer Fraud Act, N.J.S.A. 56:8-1(c).

188.    In engaging in the above conduct, Henry committed an unconscionable commercial practice, deception, fraud, falsity, misrepresentation, or knowingly concealed, suppressed or omitted material facts, with the intent that the City relied on said omissions in connection with the management of Project, in that Henry knowingly concealed or suppressed the various design and construction deficiencies from the City, and failed to inform the City that the Project was not being constructed in accordance with the agreement and/or Local, County, State and Federal regulations.

189.    Henry knowingly concealed, suppressed or omitted material facts, with the intent that City rely on such suppression, concealment or omissions to City's detriment, in

42

that the Project and completed even though it was not in compliance with the Agreement, and with Local, County, State and/or Federal regulations.  The City's reliance on Henry and its acts caused monetary damages to the City.

190.     As a result of Henry's unlawful conduct, the City has suffered an ascertainable loss of money.

<u>**DEMAND**</u>

Wherefore, the Plaintiff, City of Cape May, demands judgment against Defendant(s):

1. Kimmel, Klein, Gillan, Fralinger, Hunter, Ogren, and Henry and against all responsible Defendants, both jointly and severally for an award of monetary damages for the recovery of the City's costs to repair Defendants' faulty work and for Kimmel, Klein, Gillan, Fralinger, Hunter, Ogren, and Henry's breach of contract, together with interest counsel fees, costs of suit and awarding the City any other such relief that the Court deems just and proper.

2. Kimmel, Klein, Gillan, Fralinger, and Hunter, and all responsible Defendants, both jointly and severally for an award of monetary damages for the recovery of the City's costs to repair Defendants' faulty work and for Kimmel, Klein, Gillan, Fralinger, and Hunter's professional negligence, together with interest counsel fees, costs of suit and

awarding the City any other such relief that the Court deems just and proper.

3. Kimmel, Klein, Gillan, Fralinger, Hunter, Ogren, and Henry, and all responsible Defendants, both jointly and severally for an award of monetary damages for the recovery of the City's costs to repair Defendant's faulty work and for Kimmel, Klein, Gillan, Fralinger, Hunter, Ogren, and Henry's negligence together with interest, counsel fees, costs of suit and awarding the City any other such relief that the Court deems just and proper.

4. Kimmel, Klein, Gillan, Fralinger, Hunter, Ogren, and Henry and all responsible Defendants, both jointly and severally for an award of monetary damages for the recovery of the City's costs to repair Defendants' faulty work and for Kimmel, Klein, Gillan, Fralinger, Hunter, Ogren, and Henry's unjust enrichment together with interest, counsel fees, costs of suit and awarding the City any other such relief that the Court deems just and proper.

5. Kimmel and all responsible Defendants, both jointly and severally for an award of monetary damages for the recovery of the City's costs to repair Defendant's fault work and for Kimmel's vicarious liability, together with interest, counsel fees, costs of suit and awarding the City any other such relief that the Court deems just and proper.

44

6. Klein, Gillan, Fralinger, Hunter, Ogren, and Henry and all responsible Defendants, both jointly and severally for an award of monetary damages for the recovery of the City's cost to repair Defendant's faulty work and for Klein, Gillan, Fralinger, Hunter, Ogren, and Henry's liability for defective work, together with interest, counsel fees, costs of suit, and awarding the City and any other such relief that the Court deems just and proper.

7. Hunter, Ogren, and Henry and against all responsible Defendants, both jointly and severally, for compensatory damages, treble damages, reasonable attorney's fees, and cost of suit and any other such relief that the Court deems just and proper for Hunter, Ogren, and Henry's violation of the New Jersey Consumer Fraud Act N.J.S.A. 56:8-1 et. seq.

## JURY TRIAL DEMAND

**TAKE NOTICE** that the Defendant hereby demands a trial by jury on any issue that is so triable in this matter.

## CERTIFICATE OF SERVICE UPON THE ATTORNEY GENERAL

In accordance with N.J.S.A. 56:8-20, the Plaintiff will mail a copy of this Complaint to the Attorney General within 10 days after the filing of this pleading with the Court.

**CAPEHART SCATCHARD, P.A.**
**Attorneys for Plaintiff**
**City of Cape May**

Date:12/31/2014

By:   s/ *Anthony T. Drollas, Jr.*
      Anthony T. Drollas, Jr., Esq.


By:   s/ *William R. Burns*
      William R. Burns., Esq.